**IN THE U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| **MARVIN PICON**, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**PRECISION HEATING & AIR, INC.**,<br><br>Defendant. | ) | Civil Action No. ________________<br><br>**JURY TRIAL DEMANDED** |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, Marvin Picon ("Plaintiff"), individually, and on behalf of all similarly situated persons employed by Defendant ("Plaintiffs"), Precision Heating and Air, Inc. ("Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. and for breach of contract as well as an individual claim for retaliation under the Georgia Workers' Compensation Act ("GWCA").

2. During the relevant periods within the applicable statute of limitations for this litigation, the Plaintiff and those similarly situated were employed by Defendant as install technicians and service technicians who were required to travel to clients' residential and/or commercial properties to provide services.

3. Defendant agreed to pay install technicians and service technicians either a piece rate equal to a percentage of the total cost of each installation, or an hourly rate for all hours worked, but uniformly only counted the time Plaintiff and those similarly situated were at jobsites and excluded time spent driving between jobsites as well as other compensable time such as time spent at Defendant's facility preparing for a job or doing other work before travelling to the first jobsite.

4. Defendant agreed to pay install technicians and service technicians a piece rate equal to a percentage of the total cost of each installation with no pay for overtime hours or mandatory work at Defendant's facility or extra services added at the customer's jobsite.

5. Defendant agreed to pay install technicians 7% of the total job cost of the installation, however, Defendant routinely improperly subtracted amounts such as the entire financing fee and/or credit card fee that Defendant incurred from the guaranteed 7% of the total installation cost.

6. For example, if a 3% credit card processing fee was charged, Plaintiff and similarly situated employees would only receive 4%.

7. Defendant agreed to pay employees performing work as a service technician an hourly rate for all hours worked plus commission but failed to pay them for all hours worked or all commissions owed.

8. The travel time Defendant willfully and uniformly excluded from the hours worked by Plaintiff and those similarly situated install and service technicians is compensable time. 29 C.F.R. 785.38.

9. Accordingly, Defendant failed to pay the federal minimum wage, in violation of 29 U.S.C. § 206(a)(1)(C), much less the guaranteed percentage of the installation and/or hourly rate Defendant promised to pay, to Plaintiff and those similarly situated for unpaid work hours.

10. Defendant has failed to pay overtime compensation owed to the Plaintiff and those similarly situated for each workweek when total hours worked exceeded 40, in violation of 29 U.S.C. § 207.

11. Apart from engaging in wage theft, Defendant retaliated against Plaintiff after he filed a workers compensation claim for an injury sustained on the job.

12. The putative Class and Collective is comprised of all persons who are or were employed by Defendant as install technicians and service technicians at any time within the past 3 years based on Willful FLSA violations for minimum wage and overtime.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14. Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division pursuant to 28 U.S.C. § 1391(b)(2) because Defendant is located and conducts business in the District and most, if not all, of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

15. Plaintiff Marvin Picon is a resident of Dallas, Georgia. He worked for the Defendant from around August 1, 2023, through July 16, 2024, as an install technician who also hourly service technician work at residential and/or commercial jobsites of Defendant's clients.

16. Plaintiff brings this lawsuit on his own behalf and on behalf of all other install technicians and service technicians who are currently or were formerly employed by Defendant during the relevant time period.

17. Defendant Precision Heating and Air, LLC is a Georgia Limited Liability Company with its principal office at 3708 Buchanan Highway, Dallas, Georgia 30157, and does business within the state of Georgia.

18. Defendant describes itself as providing residential and commercial cooling, heating and plumbing service, repair, maintenance and installations throughout metro Atlanta, Georgia.

19. Defendant's registered agent is Christopher David Roe, 3708 Buchanan Highway, Dallas, Georgia 30157.

## FACTUAL ALLEGATIONS

20. During all periods relevant to this litigation, Defendant's annual sales exceeded $500,000 and it had more than two employees such that the FLSA applies in this case on an enterprise basis.

21. Defendant employs over 10 technicians who provide service, repair, maintenance and installations related to heating, cooling and plumbing at its clients' residential and commercial jobsites around metro Atlanta.

22. Defendant hired Plaintiff promising to pay him an hourly rate for service work and a piece rate equal to 7% of the total cost of each installation.

23. Defendant employs the majority of its other technicians who provide service, repair, maintenance and installations related to heating, cooling and plumbing at its clients' residential and commercial jobsites around metro Atlanta in a similar manner.

24. Similar to how Defendant paid Plaintiff, Defendant has not paid its other hourly install technicians and service technicians the promised compensation or required FLSA wages.

25. The FLSA requires Defendant to keep a record of all compensable hours worked. 29 U.S.C. § 211.

26. Defendant does not have records that show all compensable hours worked, including travel between jobs or mandatory training, for each workweek for Plaintiff or those similarly situated.

27. Defendant does not have records that show the regular rate upon which overtime premium must be calculated for workweeks where Plaintiff or those similarly situated worked more than 40 hours in a workweek.

28. Defendant kept no records to show all hours worked by technicians while being paid piece work for HVAC installations and plumbing.

29. Defendant required Plaintiff and other install technicians and service technicians to routinely drive to multiple jobsites in a single day without counting the time spent driving between the jobsites or from Defendant's facility to the first jobsite as compensable time. Accordingly, Defendant repeatedly stole wages of install technicians and service technicians by refusing to pay them their basic hourly rate for hours worked at Defendant's direction.

30. By not paying the install technicians and service technicians for travel time and depriving them and their family of their earnings, Defendant increased its profits by stealing from its employees.

31. Defendant routinely mandated employees, including Plaintiff and those similarly situated, attend meetings and trainings and regularly did not treat that time as compensable.

32. Defendant often treated as non-compensable time that Plaintiff and those similarly situated spent working at Defendant's facility when the work was not billable to a client.

33. Plaintiff and other similarly situated install technicians and service technicians to whom Defendant paid a piece rate to install HVAC units and plumbing were not paid any overtime premium for hours worked over 40 in a workweek, which routinely occurred.

34. Defendant paid install technicians and service technicians hourly for any work performed other than installing HVAC units or plumbing and did not pay an overtime premium when the hours worked exceeded 40 in a workweek.

35. Employees have complained to Defendant's management about not being paid for all hours or for overtime.

36. In addition to other employee complaints about pay, Plaintiff also notified Defendant through numerous members of management that Defendant was stealing wages and not complying with its contractual obligations or federal law.

## FLSA COLLECTIVE ACTION ALLEGATIONS

37. Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

38. Plaintiff brings this action individually and on behalf of all other individuals similarly situated pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Members of the proposed collective were employed by Defendant within the meaning of the FLSA, as install technicians and service technicians who provide service, repair, maintenance and installations related to heating, cooling and plumbing at Defendant's clients' residential and commercial jobsites around metro Atlanta.

39. The proposed collective is defined as follows:

> All persons who worked for Defendant as cooling, heating or plumbing technicians at any time within three years prior to the commencement of this action, and who were not paid a piece rate equal to a percentage of the total cost of each installation, an overtime premium or correct overtime premium for hours worked over 40 in a workweek, and/or were not paid for all hours worked including travel between jobsites, during training or other unpaid work at Defendant's facility or unexpected work at a jobsite (the "Collective").

40. Plaintiff has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b) and his consent form is attached as Exhibits A.

41. As this case proceeds, additional individuals will file consent forms and join the FLSA Collective Action as opt-in plaintiffs.

42. Plaintiffs estimate the size of the proposed Collective to be more than 40 install technicians and service technicians. The precise size of the proposed Collective can be easily ascertained from Defendant's records.

43. With respect to this case, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices and/or policies of not paying for certain hours worked and not properly paying overtime; (c) their claims are based upon the same factual and legal theories; and (d) the payroll records needed to determine the extent of the violations and amount of damages are the same among all potential Collective members.

44. The employment relationship between Defendant and every Collective member, including named Plaintiff, is the same and differ only by the

individual's name, type of service performed, exact number of hours worked each week, and rate of pay.

45. The key issues—the extent to which Defendant failed to pay install technicians and service technicians for (a) the established piece rate percentage of the total cost of each installation, (b) travel time spent travelling between jobsites, (c) training, (d) pre-shift work at Defendant's facility, (E) additional work completed at customer's jobsites, (f) all overtime hours, and (g) how overtime was calculated—do not vary among the Collective members.

46. The key legal issues—whether (a) the percentage deducted from the 7% guaranteed piece rate is owed for all jobs worked, (b) the unpaid time is compensable, (c) the overtime is owed for hours worked over 40 in a workweek, and (d) the how to calculate the regular rate for service and install technicians—are also the same for all Collective members.

## RULE 23 CLASS ACTION ALLEGATIONS

47. Plaintiff re-alleges and incorporates by reference paragraphs 1-36 as if fully set forth herein.

48. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on his own behalf and on behalf of all similarly situated individuals who are current and former employees of Defendant since

September 26, 2021, based on a four-year statute of limitation for breach of contract in Georgia.

49. The proposed Rule 23 Class is defined as:

   a. All persons who worked for Defendant as cooling, heating or plumbing install technicians and/or service technicians at any time within four years prior to the commencement of this action, and who were not paid all wages Defendant promised including for the time spent travelling between jobsites, in trainings or meetings, performing work at Defendant's facility before or after the regular workday, and/or earned commission that Defendant did not pay (the "Class").

50. The individuals in the proposed Class are so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, Defendant has employed more than 50 install technicians and service technicians during the class period.

51. There is a well-defined community of interest among the Class members and common questions of law and fact predominate in this action over any questions affecting individual Class members.

52. These common legal and factual questions, include, but are not limited to:

(a) Whether the unpaid percentage of the guaranteed piece rate is compensable;

(b) Whether the unpaid travel time purported Class members spent travelling within a workday between jobsites is compensable;

(c) Whether the unpaid time purported Class members spent in meeting and/or training that Defendant mandated is compensable;

(d) Whether the unpaid time purported Class members spent at Defendant's workplace is compensable;

(e) Whether purported Class members performed unexpected work at clients' jobsites that was not paid;

(f) Whether purported Class members paid piece rate still must be paid an overtime premium for all hours worked beyond 40 each workweek;

(g) Whether all compensation, including hourly rate, commission, piece rate payments, salaries and non-discretionary bonuses must be included in total compensation and divided by all hours worked to determine the regular rate for each employee each workweek;

(h) The data necessary and formula to calculate the damages for each member of the purported Class; and

(i) Whether Defendant's non-payment of wages for all compensable time and reduction in commission amounted to a breach of contract.

53. Plaintiff's claims are typical of those of the Class in that he and all other Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Class members' claims and his legal theories are the same as those for purported Class members.

54. Plaintiff fairly and adequately represents the interests of the Class, will be able to continue doing so, and has retained counsel highly experienced in wage and hour and class litigation.

55. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Class.

56. The questions of law and fact common to the Class predominate over any questions solely affecting individual members of the proposed Class.

57. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically

infeasible for Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for some individuals along with the fear of reprisal. Prosecution of this case as a Class action will also eliminate the possibility of duplicative lawsuits being filed in both state and federal courts.

58. This case will be manageable as a Class action. Plaintiff and his counsel know of no unusual difficulties in this case.

59. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co*., 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

60. Because Defendant acted and refused to act in ways that apply generally to the Class and the legal theories at issue are common among purported Class members, class certification pursuant to Rule 23(b)(2) is appropriate.

**COUNT I**
**(29 USC § 216(b) Collective Action)**
**VIOLATION OF THE FLSA – MINIMUM WAGE & OVERTIME**

61. Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

62. Defendant is an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 203(s)(1).

63. Defendant suffered or permitted the Plaintiff and members of the proposed Collective to work for them within the meaning of 29 U.S.C. § 203(g).

64. At all times relevant to this action, Plaintiff and members of the proposed Collective were "employees" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

65. During all times relevant to this action, Defendant routinely required Plaintiff and members of the proposed Collective to travel to more than one jobsite in a day and did not pay the FLSA minimum wage to service technicians for travel time or count the time as compensable for any technicians.

66. During all times relevant to this action, Defendant required or permitted Plaintiff and members of the proposed Collective to perform work and failed to the entire percentage of the total cost of each installation by impermissibly subtracting financing/credit card fees from the guaranteed percentage.

67. During all times relevant to this action, Defendant required or permitted Plaintiff and members of the proposed Collective to begin their workday by commuting to Defendant's office location and then travel to the first jobsite without paying or considering the travel time to the first job as compensable.

68. Defendant also did not pay any amount for the time they spent working at Defendant's office location or count it as compensable time in computing total hours worked each workweek.

69. During all times relevant to this action, Defendant required or permitted Plaintiff and members of the proposed Collective to attend training and/or meetings related to their work for Defendant and did not consider the time compensable in computing total hours worked each week or pay the FLSA minimum wage to service technicians for that time.

70. In workweeks where Plaintiff and other Collective members' total hours worked exceeded 40 hours, Defendant did not pay Plaintiff or purported Collective members 1.5 times each employee's regular rate. 29 U.S.C. § 207.

71. In workweeks where Plaintiff and other Collective members' hours that Defendant did include as compensable time exceeded 40, Defendant only paid 150% of the employee's hourly rate, which resulted in a lower overtime premium than paying 150% of the regular rate which must include all compensation due including commission.

72. Defendant acted willfully or with reckless disregard as to their obligation to pay workers a minimum hourly wage and proper overtime, and, accordingly, Defendant's violations were willful for purposes of the FLSA, 29 U.S.C. §§ 255(a) and 260. Defendant has the data necessary to calculate and properly

pay for all hours and knew it was not paying its service technicians for all hours worked or properly calculating overtime.

73. Defendant's failure to pay members of the proposed Collective the federally mandated minimum wage and overtime premiums results from Defendant's generally applicable payroll policies and practices, and does not depend on the personal circumstances of individual members of the proposed Collective.

74. Defendant's illegal conduct, as alleged above, was widespread, repetitious, and consistent among members of the proposed Collective.

75. As a result of Defendants' unlawful conduct, Plaintiff and purported Collective members incurred lost wages in an amount to be determined at trial, along with liquidated damages, attorney's fees, and costs of litigation.

76. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages including overtime plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Class Action)**
**BREACH OF CONTRACT**

77. Plaintiff re-alleges and incorporates by reference paragraphs 1-39 and 62-76 as if fully set forth herein.

78. At all times relevant to this action, Defendant promised install technicians and service technicians to pay them for each hour they worked at a pre-established (contractual) hourly rate and/or a piece rate equal to a percentage of the total cost of each installation.

79. Plaintiff and purported Class members' contractual hourly rate is identified in an offer letter, paystubs and/or other records that Defendant prepared and maintains as part of its regular business activities.

80. Defendant failed to pay Plaintiff and purported Class members all compensation promised including not paying the full hourly rate for all hours worked and subtracting amounts from commission.

81. Records of hours worked, including the unpaid travel time, training, meetings, and work at Defendant's facility as well as total amount of sales and amount paid to employees as piece rate or commission is contained in Defendant's timekeeping, GPS, field service management and other records maintained as part of Defendant's regular business.

82. Plaintiff and the purported Class members performed all of their required duties under the employment agreement.

83. By not paying Plaintiff and purported Class members all compensation promised, Defendant systematically breached its contracts with Plaintiff and purported Class members.

84. Remedies under the FLSA for the Plaintiff and Class members are inadequate during workweeks with total hours under 40 as Defendant agreed to pay an hourly rate more than the federally mandated minimum wage of $7.25 per hour (i.e., pure "gap time" claims).

85. Based on Defendant's systemic payroll practice of not paying for travel between jobs and sometimes not paying for training, meetings, travel to the first jobsite from Defendant's facility, meetings and trainings, Defendant failed to pay install technicians and service technicians the compensation promised.

86. As a direct and proximate result of Defendant's breaches of the contracts, install technicians and service technicians within the Class have been damaged by not receiving all compensation Defendant promised to pay, in an amount to be determined at trial.

87. These claims are appropriate for class certification under Rules 23(b)(2) and (b)(3) because the facts giving rise to the alleged breaches and the contractual law to be applied are the same for all Class members, the common questions of law and fact predominate over any question affecting only individuals and a Class Action is the best way to fairly and efficiently adjudicate the controversy.

**COUNT III**
**(Individual Claim of Plaintiff Picon)**
**GWCA RETALIATION**

88. Plaintiff Picon re-alleges and incorporates by reference paragraphs 1-19 as if fully set forth herein.

89. Plaintiff Picon filed a workers compensation claim with Defendant for an injury he sustained in 2025.

90. Defendant and its manager who supervised Plaintiff Picon was aware of Picon's claim and that Picon was out on workers compensation leave.

91. Upon returning from medical leave, Plaintiff Picon raised a concern with his manager that he was still experiencing pain and needed to take additional time off related to the injury.

92. In response, Defendant terminated Plaintiff Picon's employment the same day that he notified Defendant of his continued pain.

93. Defendant terminated Plaintiff Picon for having filed a workman's compensation claim and asserting his rights to additional benefits.

94. As a result of Defendant's illegal retaliation, Plaintiff Picon endured harassment, lost days of work/pay from being ill, reduced pay that led to unpaid bills and reduction in credit score, reduced self-esteem and confidence,

inability to care for family including a new born child, loss of personal time looking for a new job and loss of benefits having to change jobs.

95. Defendant has willfully and deliberately retaliated against Plaintiff Picon for asserting his GWCA rights, in violation of Plaintiffs' rights under O.C.G.A. 34-6A-5.

96. As a direct and proximate result of Defendants' willful retaliatory conduct, Plaintiff Picon has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

## JURY DEMAND

Plaintiff requests a trial by jury on all claims.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and behalf of others similarly situated, prays that this Court grant relief in their favor, and against Defendant, as follows:

(a) An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA Collective claims set forth in Count I;

(b) An Order certifying this action as a class action (for the Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

(c) An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses and phone numbers of all potential Class and Collective

members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals by mail, email and text to apprise them of their rights by law to join and participate in this lawsuit;

(d) An Order designating Plaintiff as representatives of the proposed FLSA Collective, the Class and undersigned counsel as Collective and Class counsel;

(e) An order declaring Defendant violated the minimum wage and overtime provisions of the FLSA and did so willfully;

(g) An Order declaring Defendant breached its contracts with Plaintiff and the members of the Class by failing to pay them for all compensation promised;

(g) Judgment against Defendant in an amount equal to Plaintiff's and all opt-in Plaintiffs' unpaid back wages for a period of three years and an equal amount in liquidated damages on Count I;

(h) Judgment against Defendant in an amount equal to Plaintiff and all Class members' unpaid promised compensation for a period of four years, pre-judgment interest and other consequential damages resulting from Defendant's failure to pay contractually agreed upon compensation on Count II.

(i) Judgment against Defendant for compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff Picon's lost wages, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages on Count III;

(j) An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing and pursuing this action as provided by statute;

(k) An Order awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/Dane Steffenson*
DANE STEFFENSON
GA Bar no. 677780
Dane@TheDaneLawFirm.com

**DANE LAW LLC**
3575 Piedmont Rd.
Suite L120
Atlanta, GA 30305
(404) 919-9719